ANNIE TOMPKINS, ADMINISTRATRIX, ETC., RESPONDENT, v. JOHN PURCELL, APPELLANT.

*Section 1271 of the Code of Civil Procedure — docketing judgment of U. S. court — effect of.*

Section 1271 of the Code of Civil Procedure,— providing that " a transcript of a judgment rendered within the State by a court of the United States, duly certified by a clerk of that court, may be filed with a county clerk, who must docket it as if it had been rendered by the Supreme Court of this State,"— merely directs the form and manner in which such judgment is to be docketed, but does not render it a judgment of the Supreme Court of this State, or authorize the institution of supplementary proceedings upon the return unsatisfied of an execution issued thereon.

APPEAL from an order made at Special Term denying a motion to set aside an order for the examination of the defendant, as a judgment debtor, in proceedings supplementary to execution.

*H. T. Wing* and *J. A. Shoudy*, for the appellant.

*Geo. F. Betts*, for the respondent.

INGALLS, J.:

This is an appeal from an order of the Special Term of this court, denying a motion to set aside an order granted by a justice of this court requiring the defendant to appear and be examined concerning his property. The plaintiff recovered a judgment within this

State against the defendant in the District Court of the United States, and caused the same to be docketed in the clerk's office of the city and county of New York, and an execution to be issued thereon, which was returned unsatisfied, and the plaintiffs applied for and obtained the order above mentioned for the examination of the defendant. The defendant made a motion at Special Term of this court to vacate the said order, which was denied, and he appeals to this court, the determination of which appeal involves a construction of section 1271 of the Code of Civil Procedure, which is as follows : " A transcript of a judgment rendered within the State by a court of the United States, duly certified by a clerk of that court, may be filed with a county clerk, who must docket it as if it had been rendered by the Supreme Court of this State."

It is contended by the respondent that when the judgment was docketed it became a judgment of the Supreme Court of this State, and as such entitled to be enforced by execution and proceedings supplementary thereto. The appellant contends that the statute in question simply provides for the docketing thereof, and that the words " *who must docket it as if it had been rendered by the Supreme Court of this State,*" merely apply to the form of the docket, and not to the effect of the judgment. The phraseology employed in framing this statute is so indefinite that the construction is rendered difficult and embarrassing.

In aid of such interpretation it may be profitable to refer briefly to prior statutes and adjudications bearing upon the same subject. The Revised Statutes (vol. 2, p. 173, § 38) provides as follows : " Whenever an execution against the property of a defendant shall have been issued on a judgment at law and shall have been returned unsatisfied, in whole or in part, the party suing out such execution may file a bill in chancery against such defendant and any other person, to compel the discovery of any property or thing in action," etc. Under this statute a party who had recovered a judgment in the District Court of the United States caused the same to be docketed in the clerk's office of a county within this State, and an execution to be issued and returned unsatisfied, and thereupon filed a bill in the Court of Chancery against the defendant to reach his property and chóses in action to satisfy such judgment. The chancellor dismissed the bill, holding, in substance, that such pro-

vision of the Revised Statutes did not apply to judgments recovered in the District Court, and docketed in the clerk's office of the county, and that such judgment possessed no greater force, in this respect, than judgments of a sister State, and that the remedy by creditors' bill did not apply to such judgments. (*Tarbell* v. *Griggs*, 3 Paige Ch. Rep., 208.) We do not discover that this decision has been overruled or its soundness even questioned.

The statute of 1847 (vol. 2, p. 645, chap. 470, § 39) provides as follows : " Transcripts of judgments rendered in this State, in any court of the United States, duly certified by the clerk of such court, may be filed and docketed by the clerk of any county in this State, *in the same manner as judgments rendered in the Supreme Court of this State.*" This statute provides for the docketing of such judgment, and prescribes the manner in which such docket shall be made, viz. : " In the same manner as judgments rendered in the Supreme Court of this State." This clearly refers to the form of the docket, and cannot reasonably be held to declare the effect of the judgment, or prescribe the remedy to enforce the same.

In the history of legislation upon this subject, next in order of time, follows the provision of the Code which we are seeking to construe ; and comparing the statute of 1847, above referred to, with said section 1271, we discover a change in the language employed in this particular in said section 1271. It reads : " May be filed with county clerk, who must docket it *as if it had been rendered by the Supreme Court of this State ;* " but in the statute of 1847, the expression is, " may be filed and docketed by the clerk of any county in this State, *in the same manner as judgments rendered in the Supreme Court of this State.*"

We are unable to reach the conclusion that the statute in question accomplishes more in this particular than simply to prescribe the form or manner in which the clerk should docket the judgment. In regard to the book in which the entry shall be made, and the form of such entry — which shall be in the manner judgments rendered in the Supreme Court of this State are docketed — it may not be amiss to refer to the note of the codifier appended to the section in question, which is as follows : " Neither the utility of this provision nor its precise effect, is very obvious, but it has been retained as an existing provision of law, and has been inserted at the end of this

article to guard against any possible extension of its operation in consequence of including it among the provisions at the commencement." So it appears that the codifiers did not intend, by a change in phraseology, to enlarge the effect of such statute.

It is true this is a remedial statute, and, therefore, in its construction greater liberality is justified than is allowable in reference to a penal statute. Yet all statutes are to receive a reasonable interpretation with a view to accomplish the purpose intended, keeping in mind a further consideration that it is the province of the court to construe and enforce statutes, and not legislate. We may fairly assume that had the legislature intended to place judgments rendered by the courts of the United States on a footing, in this respect, with judgments rendered in the Supreme Court of this State, and to allow the same remedies for their collection, a declaration to that effect would have been made in language far more explicit than that employed in framing the statute in question.

We are, also, disinclined to adopt the construction claimed by the respondent, as it would be likely to create great confusion and conflict by allowing concurrent remedies within the two jurisdictions, possibly proceeding at the same moment, for the enforcement of the same judgment. Such results are to be avoided, if possible, and certainly should not be precipitated by a strained and doubtful construction of a statute. We, therefore, conclude that the order of the Special Term cannot be sustained and must be reversed, and the order denying the examination of the defendant and the proceedings thereon vacated.

But as this is a new question costs of this appeal should not be allowed.

DAVIS, P. J., concurred.

Present — DAVIS, P. J., and INGALLS, J.

Order reversed, without costs.